Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Stephanie Lowe, Bar No. 292760
slowe@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
401 West A Street, Suite 1675
San Diego, California 92101
Telephone:  619.481.5900
Facsimile:   619.446-0015

Attorneys for Defendant City of El Cajon

MICHAEL A. CONGER (State Bar #147882)
LAW OFFICES OF MICHAEL A. CONGER
16236 San Dieguito Road, Suite 4-14
P.O. Box 9374
Rancho Santa Fe, CA 92067
Telephone: (858) 759-0200
Facsimile: (858) 759-1906

Attorneys for Plaintiffs Mike Murphy, et al.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mike Murphy, and Joshua Pittsley, on behalf of themselves and all other employees similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>City of El Cajon; and Does 1 through 10, inclusive,<br><br>Defendant. | Case No.: 18CV0698 JM NLS<br><br>Complaint Filed: April 9, 2018<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE**<br><br>*[Filed concurrently with Declaration of Michael A. Conger and Declaration of Mark H. Meyerhoff]*<br><br>Trial Date:  December 2, 2019 |

1

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

## I. INTRODUCTION

Plaintiffs Allen Boyer, Melissa Calderon, Jonah Conley, Jonathan Corrao, Mitchell Ferguson, James Gallivan, Patrick Gomes, Kenneth Gray, Randall Gray, William Guerin, Kenneth Harris, Benjamin Hogan, Travis Howard, Jeannine Johns, Gregory Johnson, James Juns, Jonathan Laroche, Tabitha Latinette, Ted Mansour, Timothy McFarland, Louie Michael, Mike Murphy, Joshua Pittsley, Michael Rosas, Jason Sargent, Jason Stacy, Brandon Stanley, Jeffrey Taylor, Andrew Van Woerkom, David Vojtaskovic, Jordan Walker, Justin White, and Thomas Winslow (collectively, "Plaintiffs") and Defendant City of El Cajon ("Defendant" or "City") (collectively, the "Parties") respectfully move this Court to approve their conditional Settlement Agreement and Release ("Settlement Agreement") and dismiss this case with prejudice. As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties, provides for fair and reasonable compensation to each Plaintiff based on the allegations set forth in the complaint and information discovered during discovery, and is fair and reasonable in terms of the attorney's fee and costs sought by Plaintiffs' counsel in connection with pursuing this litigation. The Settlement Agreement, which is signed by all Plaintiffs, the Defendant, and their respective counsel of record, is submitted to this Court as <u>Exhibit A</u> to the Declaration of Michael A. Conger in support of the Joint Motion for Approval of Settlement and Dismissal of Case with Prejudice ("Conger Dec.").

## II. STATEMENT OF RELEVANT FACTS

Defendant is a charter city and municipal corporation. Plaintiffs are or were employed by Defendant as sworn police officers. (Declaration of Mark H. Meyerhoff in support of Joint Motion for Approval of Settlement Agreement and Dismissal of Case ("Meyerhoff Dec."), ¶ 3.) At all times relevant to this case, Plaintiffs were non-exempt and entitled to overtime compensation under the Fair Labor Standards Act ("FLSA").

2

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

On April 9, 2018, Plaintiffs Mike Murphy and Joshua Pittsley, both current or former employees of the City, filed a civil complaint against the City and Does 1 through 10, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201, *et seq.*, and seeking unpaid overtime compensation, liquidated damages, interest, and attorneys' fees and costs based, in part, on the Ninth Circuit decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), which held cash-in-lieu of health benefits shall be included in employees' regular rate of pay, and thus in the calculation of the overtime rate (hereinafter "Action"). (Docket "Dkt" No. 1.) Specifically, Plaintiffs alleged the City failed to correctly pay overtime to Plaintiffs as required by the FLSA by failing to include all remuneration for employment paid to, or on behalf of, the Plaintiffs in the regular rate of pay calculation. (*Id.*)

From April 9, 2018 to November 1, 2018, thirty-four (34) individuals filed Consents to Join the Action as Plaintiffs. (Dkt. Nos. 3-33, 36, 39, 42, 44.) On January 30, 2019, Plaintiffs filed a voluntary dismissal of Jeremiah Larson as a plaintiff, thereby bringing the total number of Plaintiffs to 33. (Dkt. No. 49.)

On May 3, 2018, Defendant filed an Answer denying Plaintiffs' material claims and asserting various affirmative defenses. (Dkt. No. 34.) Defendant disputes it owes the overtime wages asserted by Plaintiffs since even if it has overtime liability, it contends it has substantially overpaid Plaintiffs' overtime wages far in excess of FLSA overtime requirements

On October 15, 2018, Plaintiffs filed a motion to amend/correct their Complaint, which the Court granted. (Dkt. Nos. 43, 46.) On November 14, 2018, Plaintiffs filed an Amended Complaint for Overtime Wages to add an allegation that the City's total cash-in-lieu benefits payments under the cafeteria benefit plan were sufficiently large as a percentage of the City's total contributions and could not lawfully be deemed incidental under the meaning of 29 U.S.C. section 207(e)(4) and 29 C.F.R. section 778.215(a)(5). (Dkt. No. 47.) Plaintiffs alleged the City was

3

obligated to include as qualifying remuneration all amounts which the City paid to trustees or third parties on an employee's behalf under the City's cafeteria benefit plan. (Dkt. No. 47.) On November 28, 2018, Defendant filed an Answer to the Amended Complaint. (Dkt. No. 48.)

### III. THE PARTIES' SETTLEMENT EFFORTS

In recognition of the high costs of litigation and in an effort to secure harmonious labor relations, the Parties have been engaged in negotiations regarding settlement and resolution of these matters. (Conger Dec., ¶ 6; Meyerhoff Dec., ¶ 7.) As part of these efforts, the City exchanged significant amounts of relevant payroll and timekeeping data with Plaintiffs. (*Id.*) The Parties presented each other with legal authority in support of their respective positions. (*Id.*)

On February 8, 2019, the City provided a settlement offer pursuant to Federal Rule of Civil Procedure, Rule 68 to Plaintiffs. (Meyerhoff Dec., ¶ 9.) The City also provided a letter describing the legal authority to support its positions. (*Id.*) The City offered Plaintiffs $9,134.80 for settlement, plus any costs incurred as of the date of the offer. (*Id.*) The $9,134.80 included offers of damages and liquidated damages to Plaintiffs Mitchell Ferguson, Kenneth Gray, Randall Gray, Tabitha Latinette, and Joshua Pittsley and offers of $250 for all other Plaintiffs, who the City had determined were not owed any back pay amounts under the FLSA. (*Id.*) Plaintiffs rejected the City's Rule 68 offer. (*Id.*)

On April 11, 2019, the Parties met in-person to discuss settlement. (Conger Dec., ¶ 7; Meyerhoff Dec., ¶ 10.) During the meeting, the Parties discussed their respective positions and negotiated to reach a settlement and an agreement on a methodology for a settlement payment. (*Id.*).) By the end of the meeting, the Parties had agreed in principle to the material terms of a settlement that would resolve the Action related to the calculation and payment of overtime compensation under the FLSA. (*Id.*)

4

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

## IV. RELEVANT TERMS OF SETTLEMENT

As a result of the efforts summarized above, the Parties have agreed to settle this matter for a total sum of $91,000.00 or $96,000.00, as described below. This settlement includes all amounts to be paid by Defendant to Plaintiffs, attorney's fees, costs, and liquidated damages inclusive, to resolve this matter. Key details of the settlement terms are as follows:

1. The City agrees to pay the individual Plaintiffs a total sum of $61,000.00. The individual allocations of the total sum were negotiated and agreed upon by the Parties based upon the total number of statutory overtime hours each Plaintiff worked from April 9, 2015 to June 15, 2018;[1]

2. Of the total settlement amount, $30,000.00 is allocated to Plaintiffs' counsel, Michael A. Conger of the Law Offices of Michael A. Conger, for attorney's fees and costs, which represents approximately 32.96% of the total settlement amount. However, if Mr. Conger expends more than 20 hours of billable time on this action after April 11, 2019, the City shall pay Mr. Conger an additional $5,000 in attorney's fees and costs, which would result in $35,000 in attorney's fees and costs and a total settlement amount of $96,000.00 and which represents approximately 36.46% of the total settlement amount;

3. In exchange, Plaintiffs agree to release all overtime claims against Defendant under any legal theory relating to or arising from this Action, and agree to dismiss the action with prejudice.

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel. Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and

---

[1] Commencing with the paycheck to Plaintiffs on July 27, 2018, covering the work period between June 16, 2018 and July 13, 2018, the City modified its calculation of its overtime rate of pay for FLSA and contract overtime to include the amounts paid as cash-in-lieu of health benefits, non-discretionary Non-PERSable cash stipends, and all other remuneration includable in the regular rate of pay.

5

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

Release and executed separate "Settlement Agreement and Release" signature page documents to that end. (Conger Dec., ¶ 9.)

## V. LEGAL STANDARD

Settlement of collective action claims under the FLSA requires court approval. (*Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).) The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. (*Thompson v. Costco Wholesale Corp..*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at *6 (S.D. Cal. Feb. 22, 2017).) However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. (*Id.*; *Selk*, 159 F.Supp.3d at 1172; see also *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982).) "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" (*Selk*, 159 F.Supp.3d at 1172 [internal quotation marks and citation omitted].) A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. (*Id.*)

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. (*Selk*, 159 F.Supp.3d at 1172-1173.) To determine whether the proposed FLSA settlement is fair and reasonable, courts in this circuit have balanced factors such as:

(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3)

6

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. (*Selk*, 159 F.Supp.3d at 1173.)

With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." (*Id.*)

## VI. ARGUMENT

In order to approve the settlement in the instant case, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of attorney's fees and costs are reasonable.

### A. BONA FIDE DISPUTES

The Court should approve the proposed Settlement Agreement because it resolves a bona fide dispute between the Parties regarding legitimate questions over the existence and extent of Defendant's liability. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues that are actually in dispute, the district "court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" (*Selk*, 159 F.Supp.3d at 1173; *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the Parties with respect to coverage or amount due under the [FLSA]").)

Here, a bona fide dispute exists over the overtime hour threshold applicable under the FLSA. The City has established a 28-day work period under 29 U.S.C. section 207(k) for its law enforcement employees. (Meyerhoff Dec., ¶ 4.) Article 4, Section A of the Memorandum of Understanding between the City of El Cajon

7

and the El Cajon Police Officers Association ("MOU") expressly describes a 28-day 7(k) work period for all Police employees. (*Id.*) Plaintiffs assert the overtime hour threshold is 160 hours, meaning that FLSA overtime is triggered when a Plaintiff works more than 160 hours in the 28-day work period. (Conger Dec., ¶ 4.) Plaintiffs' position is based on the language in the MOU, which describes that overtime premium pay shall be paid for hours worked "(a) in excess of 160 hours during the 28-day work period, (b) on the employee's scheduled day off, (c) upon being called back or held over after the employee's scheduled shift" following the language in Article 4, Section A of the MOU. (*Id.*) The City contends the 28-day work period has a 171 hour threshold before FLSA overtime is triggered pursuant to 29 C.F.R. § 553.230(c). (Meyerhoff Dec., ¶ 5.) The City recognizes that the MOU provides a different, contractually-agreed upon overtime threshold of 160 hours, which is more generous than what the FLSA requires. (*Id.*) The City's position is that the FLSA overtime threshold is defined by statute only. (29 C.F.R. § 553.230(b); *Chavez v. City of Albuquerque,* 630 F.3d 130, 1311 (10th Cir. 2011).) The FLSA guarantees minimum overtime compensation and is not a supplement to contractual compensation. (*Chavez, supra* at p. 1307.) The City asserts contractual overtime and FLSA overtime are not the same things and for purposes of the FLSA, all hours worked under the 171-hour statutory maximum are non-overtime labor. (*Id.*)

A bona fide dispute also exists over the overtime hour threshold and the proper methodology used to calculate overtime owed under the FLSA. Plaintiffs assert the damages should be calculated using the regularly scheduled hours as the divisor to determine the "regular rate" before making the time and one-half calculation. (Conger Dec., ¶ 5.) Plaintiffs base this method on the cases *Bay Ridge Operating Co., Inc. v. Aaron,* 334 U.S. 446 (1948) and *Local 246 Utility Workers Union of America v. Southern California Edison Company,* 83 F.3d 292 (1996). (*Id.*) Defendant disagrees with Plaintiffs and argues the two cases do not support a

8

methodology calculating the regular rate of pay by dividing total remuneration by regularly scheduled hours. (Meyerhoff Dec., ¶ 6.) The City has consistently maintained that Plaintiffs are hourly, non-exempt employees and that the proper method for calculating their overtime is the method set forth in 29 C.F.R. section 778.109 and 29 C.F.R. section 778.110(b) and other authorities that use the actual hours worked as the divisor. The City's method uses all hours actually worked as the divisor, including overtime hours, to calculate the "regular rate", and applies a premium (i.e., .5 times the regular rate) to all overtime hours actually worked. (*Id.*)

If the litigation were to continue and the City were held liable for the failure to include cash in lieu in the "regular rate," the calculation of the back wages would be impacted based on the overtime calculation method applied. As a practical matter, were the City to prevail on the issues related to the overtime threshold and divisor, Plaintiffs' damages would be reduced by over $60,115.20 (approximately 98.6% when compared to the total payment of $61,000). In addition, this calculation dispute likely would not be resolved for multiple years, given that either party likely would appeal an adverse ruling on this issue to the Ninth Circuit, and perhaps beyond.

Based on the foregoing, it is respectfully submitted that the Settlement Agreement resolves a bona fide dispute between the Parties.

**B.    THE PROPOSED SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF PLAINTIFFS' CLAIMS**

To determine whether a FLSA settlement is fair and reasonable, courts evaluate the "totality of the circumstances" within the context of the purposes of the FLSA. (*Selk*, 159 F.Supp. 3d at 1173.) Courts in the Ninth Circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the

9

settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. (*See Selk*, 159 F.Supp.3d at 1173; *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017.)

### 1. Plaintiffs' Range of Possible Recovery

Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of underpaid wages for the three year period prior to opting into the lawsuit (i.e., an award of liquidated damages coupled with a finding the violation was willful).

Under the terms of the Settlement Agreement, Defendant will pay Plaintiffs a total sum of $91,000.00 or $96,000.00. The City offered Plaintiffs a total sum of $61,000.00 as the maximum amount to be paid to Plaintiffs to settle this Action, not including attorney's fees and costs. Plaintiffs accepted the City's offer. The Parties negotiated and agreed upon method for calculating the amount paid to each Plaintiff was to: (1) Determine the total number of FLSA overtime hours (hours worked over 171 hours) all Plaintiffs worked between April 9, 2015 and June 15, 2018; (2) Divide to total offer of $61,000 by the total number of FLSA overtime hours all Plaintiffs worked between April 9, 2015 and June 15, 2018 to determine a pro-rated value for each FLSA overtime hour worked; (3) Multiply each Plaintiff's individual number of FLSA overtime hours worked between April 9, 2015 and June 15, 2018 by the pro-rated value for each FLSA overtime hour to determine the individual settlement payment ("Damages Payment") for each Plaintiff; and (4) Apply a minimum of $500 for any Plaintiff whose individual settlement amount was below $500 and apply a maximum of $3,200 for any Plaintiff whose individual settlement amount was above $3,200.

After applying the $500 minimum and $3,200 maximum to the Plaintiffs, the total amount of the Damages Payment for all Plaintiffs was $54,922.76. The Parties negotiated and agreed that the $6,077.24 difference between the total offer of $61,000 and the Damages Payment for all Plaintiffs of $54,922.76, would be

divided between the three Plaintiffs who had been subject to the $3,200 cap as follows: Kenneth Gray would receive $7,037.28 ($3,837.28 above the cap); Randall Gray would receive $3,751.80 ($551.80 above the cap); and James Juns would receive $4,888.16 ($1,688.16 above the cap). Based on this negotiated and agreed upon methodology for calculated Damages Payments to Plaintiffs, the minimum and maximum Damages Payments any Plaintiff receives is $500 and $7,037.28.

The City conducted its own calculations of the potential FLSA liability and determined that Plaintiffs would only have been entitled to $442.40 using the City's calculation method ($884.80 total if liquidated damages were to be added). (Meyerhoff Dec., ¶ 8.) The City's calculation uses 171 hours as the overtime threshold and divides all remuneration earned in a 28-day work period by actual hours worked to calculate the regular rate of pay. (*Id.*) The $442.40 included unpaid wages over a three-year statute of limitations period. (*Id.*) The City previously provided a settlement offer pursuant to Federal Rule of Civil Procedure, Rule 68 to Plaintiffs on February 9, 2019. (Meyerhoff Dec., ¶ 9.) The City offered Plaintiffs $9,134.80 for settlement, plus any costs incurred as of the date of the offer. (*Id.*) The $9,134.80 included offers of damages and liquidated damages to Plaintiffs Mitchell Ferguson, Kenneth Gray, Randall Gray, Tabitha Latinette, and Joshua Pittsley and offers of $250 for all other Plaintiffs, who the City had determined were not owed any back pay amounts under the FLSA. (*Id.*) Plaintiffs rejected the City's Rule 68 offer. (*Id.*)

Taken together, the terms of the Settlement Agreement provide Plaintiffs with prompt, significant, and certain recovery, especially given the risks presented by continued litigation. Although the risks primarily involve a decrease in the potential award rather than a verdict of no liability, the risk of a lesser recovery favors settlement. The settlement affords the Plaintiffs prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have

prevented the Plaintiffs from obtaining as favorable a recovery. While counsel for both Parties believe their positions on the above are meritorious, they are experienced and realistic, and understand that the resolution of the foregoing and other key issues, the outcome of a trial, and the outcome of any appeals that may follow, are inherently uncertain in terms of both outcome and duration. (Conger Dec., ¶ 12; Meyerhoff Dec., ¶ 11.) Accordingly, this factor weighs in favor of approval of the settlement because the interests of the Plaintiffs are better served by settlement than the attendant risks of further litigation.

### 2. The Stage of Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. (*See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").) As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. (*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)

Here, the Parties have sufficient information to make an informed decision regarding settlement. Specifically, Plaintiffs propounded discovery to obtain the necessary evidence to form an adequate appreciation of the merits of the cases before reaching the proposed settlement. Over the course of months, Defendant produced thousands of records related to Plaintiffs' hours worked and compensation paid, such as payroll records, attendance reports, payroll calculations, payroll calendars, payroll codes, memoranda of understanding, Section 125 flexible benefit plan documents, and other local authorities governing Plaintiffs' compensation. Plaintiffs also deposed the City's Director of Human Resources. (Conger Dec., ¶ 10.) Accordingly, this factor also weighs in favor of

settlement.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).) As discussed in greater detail above, the Settlement Agreement provides Plaintiffs with complete relief. In other words, continued litigation could only harm Plaintiffs by jeopardizing the relief already secured on their behalves.

This is especially true given that there are a number of variables that could impact the calculation of damages in this case. First, if this case continued in litigation, Defendant would assert defenses that it acted in good faith and had reasonable grounds for believing its conduct was in compliance with the FLSA and that any alleged violation was not willful. If a court at trial were to find in favor of Defendant on these defenses, Plaintiffs may not recover any damages based upon the City's alleged willfulness (which would reduce the recovery period in the proposed settlement from three (3) years to two (2) years) or the City's alleged lack of good faith, which would reduce the claimed damages by 50%. Should Plaintiffs not prevail on these issues, their recovery would be significantly diminished.

Second, the City contends that FLSA overtime should be counted based on the 171 hour threshold pursuant to 29 C.F.R. § 553.230(c) and the proper method for calculating their overtime is the method set forth in 29 C.F.R. section 778.109 and 29 C.F.R. section 778.110(b), which use the actual hours worked as the divisor. If the City were to prevail in this regard, again, Plaintiffs' recovery would be diminished by $60,115.20 (approximately 98.6% when compared to the total payment of $61,000). All of these concerns pose a risk to Plaintiffs that could decrease their overall recovery. Accordingly, this factor also weighs in favor of approval of settlement.

13

4. **The Scope of Any Release Provision in the Settlement Agreement**

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." (*Slezak*, 2017 WL 2688224, at *5.) Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. (*See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").)

Here, the Settlement Agreement states:
> All PARTIES to this AGREEMENT understand that this Release extends only to all grievances, disputes or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to PLAINTIFFS' claims relating to the ACTION that the City violated the FLSA up to and including the Effective Date of this AGREEMENT. The PARTIES understand that this Release does not include claims relating to conduct or activity which does not arise from or is not attributable to PLAINTIFFS' FLSA claims or to any conduct or activity which occurs after the Effective Date of this AGREEMENT.

The Parties share an understanding that only those claims arising from or attributable to Plaintiffs' claims in this action are being released. In fact, the release itself confirms the release does **not** include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiffs' FLSA claims. Such a narrowly-tailored and carefully drawn release, coupled with the Parties' shared understanding, favors approval of settlement.

5. **The Experience and Views of Counsel**

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's

14

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
401 West A Street, Suite 1675
San Diego, California 92101

familiarity with th[e] litigation and previous experience with cases." (*Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).) Here, Plaintiffs' counsel Michael A. Conger asserts that the terms of the Settlement Agreement are fair, just, and reasonable, and that the settlement amount reflects the maximum amount that Plaintiffs could expect to recover if this matter were to proceed to trial. (Conger Dec., ¶ 11.) Mr. Conger has years of experience litigating FLSA claims and has settled multiple FLSA claims and obtained court approval of those settlements. (Conger Dec., ¶ 2.) As such, his evaluation of the case is reliable.

Collectively and individually, counsel for Defendant have years of experience advising public agencies on FLSA matters and defending public agencies in FLSA lawsuits. (Meyerhoff Dec., ¶ 2.) Based on this experience, it is the position of defense counsel that this settlement is fair and reasonable and will have a materially beneficial effect on Plaintiffs' compensation. (Meyerhoff Dec., ¶ 12.) Accordingly, this factor weighs in favor of approval of the settlement.

### 6. The Possibility of Fraud or Collusion

At all times, settlement negotiations have been at arms-length and there has been no fraud or collusion. Approval by all of the Plaintiffs further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations. Accordingly, this factor also weighs in favor of approval.

### C. ATTORNEYS' FEES AND COSTS

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." (*Selk*, 159 F.Supp.3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").) "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees." (*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).)

15

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
401 West A Street, Suite 1675
San Diego, California 92101

The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. (*Id.* at 1047-48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.")) This Court has provided guidance that with respect to the benchmark or percentage method 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. (V*elazquez v. International Marine and Industrial Applicators, LLC*, 2018 WL 828199, at *7 (S.D. Cal., Feb. 9, 2018).) Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. (*Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Ltig.*, 779 F. 3d 934, 954-55 (9th Cir. 2015).) Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." (*Vizcaino*, 290 F.3d at 1048.) The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. (*Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.)

Pursuant to the Settlement Agreement, Plaintiffs' counsel will be paid $30,000 in attorney's fees and costs or $35,000 in attorney's fees and costs should he expend more than 20 additional billable hours on the action after April 11, 2019, and Plaintiffs will receive $61,000. Plaintiffs' counsel has provided that between April 12, 2019 and June 12, 2019, he has expended 26 additional billable hours on the action. (Conger Dec., ¶ 16.) Thus, $35,000 in attorney's fees and

costs represent approximately 36.46% of the total $96,000 recovery. While 36.46% is higher than the presumptively reasonable benchmark for attorneys' fees, the $35,000 is intended to cover both attorneys' fees *and* costs and is not inconsistent with awards allowed in similar cases.[2] (*See Banks v. Pyramid Consulting, Inc.*, 2019 WL 338493 (S.D. Cal. Jan. 28, 2019 (approving attorneys' fees and costs in the amount of 34.5% of the settlement fund); *Ambrosino v. Home Depot U.S.A., Inc.* 2014 WL 3924609 (S.D. Cal., Aug. 11, 2014) (approving $113,588.76 in attorneys' fees and $39,291.15 in costs, which was approximately 44.86% of the total recovery); *Selk*, 159 F.Supp.3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA action, which was 45% of the total settlement amount); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July 21, 2008) (awarding $3,038,402.80 in attorneys' fees and costs, which was approximately 35.75% of the common fund in a wage and hour class action settlement).)

Calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award. (*Vizcaino*, 290 F.3d at 1050; *Espinosa v. California College of San Diego, Inc.* 2018 WL 1705955 (S.D. Cal., April 9, 2018).) When using a lodestar as a cross-check, courts "'…need not be as exhaustive as a pure loadstar calculation' because it only serves as a point of comparison to assess the reasonableness of a percentage award." (*Espinosa*, 2018 WL 1705955, at *10.) Here, the attorney's fees and costs provided by the Settlement Agreement and Release are well below those that would be provided to

---

[2] Plaintiffs' costs for litigation exceed $3,400. (Conger Dec., ¶ 14.) If $3,400 were to be excluded from the $35,000 for attorney's fees and costs, the $31,600 in attorney's fees would represent 32.91% of the $96,000 total recovery. While 32.91% is higher than the presumptively reasonable benchmark for attorneys' fees, it is not inconsistent with awards allowed in similar cases. (*See Ambrosino v. Home Depot U.S.A., Inc.* 2014 WL 3924609 (S.D. Cal., Aug. 11, 2014) (approving $113,588.76 in attorneys' fees, which was 33.3% of the total recovery); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (approving attorneys' fees only in the amount of 33% of the common fund); *Singer v. Becton Dickinson and Co.* 2010 WL 2196104 (C.D. Cal., April 24, 2014), at *8 (approving an attorneys' fee award of 33.33%).)

17

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

a prevailing party in a wage and hour action in the Southern District if the fee award was calculated based upon the hours expended at the prevailing rates.

Prevailing parties are entitled to receive an award of fees for all hours reasonably expended at rates in line with the "prevailing market rate of the relevant community." (*Carson v. Billings Police Dept.*, 470 F.3d 889, 891 (9th Cir. 2006).) In wage and hour actions, this court has previously accepted hourly rates between $200 and $800 for partners and senior counsel as reasonable for lodestar cross-check purposes. (*See Velasquez v. International Marine and Industrial Applicators, LLC* 2018 WL 828199, at *9 (S.D. Cal. Feb. 9, 2018) (using counsel's hourly rates from $200 to $800 for lodestar cross-check); *Espinosa,* 2018 WL 1705955, at *10 (using plaintiff's counsel's hourly rate of $650 to determine the requested percentage award for attorneys' fees was reasonable); *Thompson v. Costco Wholesale Corp.,* 2017 WL 3840342, at *9 (S.D. Cal. Sept. 1, 2017) (using $650 hourly rate for attorney with 13 years of practice and $875 hourly rate for attorney with 31 years of practice in reviewing lodestar calculation.) Other district courts in California have approved similar rates. (*See Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners).)

Plaintiffs' counsel's hourly rate is $650. (Conger Dec., ¶ 14.) Plaintiffs' counsel has over 25 years of practice litigating wage and hour claims and employment law matters. (Conger Dec., ¶ 2.) Plaintiffs' counsel has expended over 92 hours on this matter. (Conger Dec., ¶ 14.) Plaintiffs' counsel's lodestar amount for the work performed in this action would be calculated as exceeding $60,000.00. (*Id.*) Plaintiffs' costs for litigation exceed $3,400. (*Id.*) Plaintiffs' counsel seeks approval of a substantially reduced amount of $35,000 for attorneys' fees and costs, which is significantly less than the loadstar method even without a multiplier on the loadstar amount. Therefore, in light of the lodestar cross-check, the request attorney's fees are reasonable and this Court should approve the slight

18

Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice; 18CV0698 JM NLS
8865107.2 EL020-201

deviation from the 25% benchmark.

## VII. CONCLUSION

Based on the foregoing, the Parties respectfully request this Court approve the proposed Settlement Agreement.

Dated: June 12, 2019                           LIEBERT CASSIDY WHITMORE


By: /s/ Mark H. Meyerhoff
    Mark H. Meyerhoff
    David A. Urban
    Stephanie Lowe
    Attorneys for Defendant City of El Cajon


Dated: June 12, 2019                           LAW OFFICES OF MICHAEL A. CONGER


By: /s/ Michael A. Conger
    Michael A. Conger
    Attorneys for Plaintiffs Mike Murphy, et al.

# CERTIFICATE OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in the County of San Diego, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 401 West A Street, Suite 1675 San Diego, CA 92101.

I hereby certify that on **June 12, 2019,** I electronically filed the foregoing

1.) **JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE.**

2.) **DECLARATION OF MARK H. MEYERHOFF IN SUPPORT OF JOINT STIPULATION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE.**

3.) **DECLARATION OF MICHAEL A. CONGER IN SUPPORT OF JOINT STIPULATION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL WITH PREJUDICE.**

with the Clerk of the Court for the United States District Court for the Southern District of California by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users.

I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on **June 12, 2019,** in San Diego, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/Stephanie Lowe
Stephanie Lowe