UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE MURPHY and JOSEPH PITTSLEY, on behalf of themselves and all other employees similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF EL CAJON,<br><br>Defendant. | Case No.: 18cv0698 JM(NLS)<br><br>**ORDER ON JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE** |

Presently before the court is the parties' Joint Motion for Approval of the Settlement Agreement and Dismissal of Case with Prejudice, (Doc. No. 54). The court finds the motion suitable for determination on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the court grants the motion for approval of the settlement.

**I.     BACKGROUND**

Defendant El Cajon (the "City') is a charter city and municipal corporation that employed Plaintiffs as sworn police officers. The lawsuit arises out of the City's alleged failure to correctly pay overtime to Plaintiffs as required under the Fair Labor Standards Act ("FLSA").

On April 9, 2018, Plaintiffs Mike Murphy and Joshua Pittsley filed a collective action complaint against the City. (Doc. No. 1.) The complaint alleged the City failed to correctly pay overtime to Plaintiffs as required by the FLSA because it failed to include "all remuneration for employment paid to, or on behalf of, the plaintiffs in the regular rate calculation." (*Id.* at ¶ 13.)

From April 9, 2018 to November 1, 2018, thirty-four (34) individuals filed Consents to Join the Action as Plaintiffs, (Doc. Nos. 3-33, 36, 39, 42, 44) with one plaintiff, Jeremiah Larson, voluntarily dismissing his claim on January 30, 2019, (Doc. No. 49).

On May 8, 2018, Defendant filed an Answer to the Complaint. (Doc. No. 34.) On July 16, 2018, the court issued a Scheduling Order regulating discovery and other pre-trial proceedings. (Doc. No. 41.)

On November 14, 2018, Plaintiffs filed an amended complaint ("FAC") which added an allegation related to the City's Cafeteria Benefit Plan ("CBP"). (Doc. No. 47 at 4.)[1] On November 28, 2018, Defendant filed an Answer to the FAC. (Doc. No. 48.)

On February 8, 2019, the City provided Plaintiffs with a settlement offer pursuant to Federal Rule of Civil Procedure Rule 68. (Meyerhoff Decl. ¶ 9.) The City offered Plaintiffs $9,134.80 for settlement, plus any costs incurred as of the date of the offer. The $9,134.80 included offers of damages and liquidated damages to Mitchell Ferguson, Kenneth Gray, Randall Gray, Tabitha Latinette and Joshua Pittsley and offer of $250 to all other Plaintiffs that the City had determined were not owed any back pay under the FLSA. (*Id.* at ¶ 9.) The offer was rejected by Plaintiffs.

On April 11, 2019, the parties held an in-person settlement meeting. (Conger Decl., ¶ 7; Meyerhoff Decl. ¶ 10.) The parties reached an agreement that resolved the action

---

[1] Under the CBP the City pays cash-in-lieu payments to the Plaintiffs if CBP allowance exceeds the total cost of benefits. (FAC at 4.) The FAC alleges the City's CBP was sufficiently large as a percentage of the City's total contributions, during each relevant year, that they could not lawfully be deemed incidental and therefore could not be excluded from a determination of remuneration and regular rates of pay. (*Id.* at ¶ 23.)

related to the calculation and payment of compensation under the FLSA. (*Id.*) At the time of settlement, no substantive motion practice had occurred.

On June 12, 2019, the parties filed a Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice. (Doc. No. 54.) Under the terms of the settlement, each Plaintiff will receive the following payment for his or her respective unpaid overtime compensation and damages:

| Plaintiff | Damages Payment |
|---|---|
| Allen Boyer | $1,417.81 |
| Melissa Calderon | $2,917.24 |
| Jonah Conley | $575.37 |
| Jonathan Corrao | $2,293.23 |
| Mitchell Ferguson | $1,673.35 |
| James Gallivan | $1,630.49 |
| Patrick Gomes | $1,243.59 |
| Kenny Gray | $7,037.28 |
| Randall Gray | $3,751.80 |
| William Guerin | $1,552.44 |
| Kenneth Harris | $1,583.50 |
| Benjamin Hogan | $1,740.12 |
| Travis Howard | $1,344.62 |
| Jeannine Johns | $700.66 |
| Gregory Johnson | $500.00 |
| James Juns | $4,888.16 |
| Jonathan Laroche | $500.00 |
| Tabitha Latinette | $1,620.60 |
| Ted Mansour | $500.00 |
| Timothy McFarland Jr. | $2,469.64 |

| | |
|---|---|
| Louie Michael | $3,139.27 |
| Mike Murphy | $1,094.68 |
| Joshua Pittsley | $2,392.15 |
| Michael Rosas | $1,894.27 |
| Jason Sargent | $624.83 |
| Jason Stacy | $2,919.91 |
| Brandon Stanley | $1,256.25 |
| Jeffrey Taylor | $3,101.88 |
| Andrew Van Woerkom | $1,586.80 |
| David Vojtaskovic, II | $687.48 |
| Jordan Walker | $1,362.59 |
| Justin White | $500.00 |
| Thomas Winslow | $500.00 |

(Doc. No. 56 at 17-18.) The settlement results in a total payment amount of $61,000, with the City paying an additional $30,000 in attorney's fees and costs to the Law Offices of Michael A. Conger for a total settlement amount of $91,000.[2] (*Id.* at 9.) Each of the 33 Plaintiffs have signed an "Individual Settlement Agreement and Release." (*Id.* at 19-51.)

## II. LEGAL STANDARD

The FLSA establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 69 (2013). It authorizes individual suits and allows claims to be brought on behalf of similarly situated individuals, which are frequently referred to as collective

---

[2] The settlement agreement includes a provision that if Mr. Conger expends more than 20 hours of billable time on this action after April 11, 2019, the City shall pay him an additional $5,000 in attorney's fees and costs, resulting in a total settlement amount of $96,000. (Doc. No. 56 at 9 ¶ 1.a.)

4

actions. *See Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see also Does v. Advanced Textile Corp.,* 214 F.3d 1058, 1064 (9th Cir. 2000). Unlike traditional class actions brought under Rule 23 of the Federal Rules of Civil Procedure, collective actions brought under the FLSA require that individual members "opt in" by filing a written consent. *See* 29 U.S.C. §216(b).[3]

"Settlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.,* No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Selk v. Pioneers Mem'l Healthcare Dist.,* 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ("claims for unpaid wages under the FLSA may only be waived or otherwise settled if supervised by either the Secretary of Labor or a district court."). However, "a Court has a considerably less stringent obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement." *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. Oct. 8, 2015) (internal quotation marks omitted). Thus, "[s]ettlements that reflect a fair and reasonable compromise of issues that are actually in

---

[3] Although the Ninth Circuit has yet to directly address what constitutes the appropriate procedure for "similarly situated," the certification procedure for an FLSA collective action differs from a traditional class action, with district courts within this circuit generally using an *ad hoc* two-tiered approach. First, at the "notice stage," the court determines if the plaintiffs are similarly situated, certifying the collective action for the limited purpose of sending notice of the action to potential class members. *See, e.g., Hill v. R+L Carriers, Inc.,* 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010). The "notice stage" conditional certification requires a plaintiff show substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan," but the standard is lenient, and certification is usually granted. *Id.* The second determination is made at the close of discovery and utilizes a stricter standard where, "the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Id.* (citing *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001)).

dispute may be approved to promote the efficiency of encouraging settlement of litigation." *Kerzich v. Cnty. of Tuolumne,* No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *3 (E.D. Cal. Apr. 19, 2019) (citing *McKeen-Chaplin v. Franklin Am. Mortg. Co.,* No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012)).

Absent specific criteria from the Ninth Circuit, California courts consistently apply the standard set forth in the Eleventh Circuit case, *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1355 (1982). *See, e.g. Kerzich,* 2019 WL 1755496, at *2; *Dashiell v. Cnty. of Riverside*, Case No. EDCV 15-00211 JGB (Spx), 2018 WL 3629915, at *2-3 (C.D. Cal. July 19, 2018); *Selk,* 159 F. Supp. 3d at 1172; *Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). Under that standard, the relevant considerations are whether the settlement constitutes a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,* 679 at 1355.

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk,* 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). This means that "[t]here must be some doubt … that the plaintiffs would succeed on the merits through litigation on their FLSA claims." *Id.* In determining whether a settlement is "fair and reasonable," the court should consider a variety of factors including: (1) the range of possible recovery; (2) the seriousness of the litigation risks; (3) the experience and views of counsel and opinions of participating plaintiffs; (4) the stage of the proceedings and extent of discovery completed; (5) the scope of release provision; and (6) the possibility of fraud or collusion. *Id*. at 1174-1180.

### III. DISCUSSION

The joint motion seeks approval of the proposed settlement agreement that provides individual awards to each opt-in Plaintiff ranging from $500.00 to $7,037.28 for a collective amount of $61,000.00 and an award of attorney's fees and costs in the amount of $35,000.00.

### 1. Bona Fide Dispute

A district court may approve a settlement in an employee FLSA suit that reflects a reasonable compromise over disputed issues, such as minimum wages or overtime compensation, "to promote the policy of encouraging settlement of litigation." *Slezak v. City of Palo Alto.,* No. 16-CV-03224-LHK, 2017 WL 2688224, at *2 (N.D. Cal. June 22, 2017) (internal quotation marks and citations omitted); *see also Lynn's Food Stores,* 679 F.2d at 1353 n.8 (requiring "settlement of a bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]").

Here, the parties have two substantive disagreements regarding the claim. First, the parties dispute which is the applicable overtime hour threshold under the FLSA. Plaintiffs assert the overtime threshold is 160 hours based on the language in the Memorandum of Understanding ("MOU") between the City and the El Cajon Police Officers Association. (Conger Decl. at ¶ 4.) The City asserts contractual overtime and FLSA overtime are not the same and, for purposes of an FLSA claim, all hours worked under the 171-hour statutory maximum pursuant to 29 C.F.R. § 553.230(c) are non-overtime labor. (Meyerhoff Decl. at ¶ 5.)

Second, the parties dispute the proper methodology used to calculate overtime owed under the FLSA. Plaintiffs assert the calculation should be made using the regularly scheduled hours as the divisor to determine the regular rate, relying on *Bay Ridge Operating Company, Inc. v Aaron*, 334 U.S. 446 (1948) and *Local 246 Utility Workers Union of America v. Southern California Edison Company,* 83 F.3d 292 (1986), for support. (Conger Decl. at ¶ 5.) The City has articulated, as it has maintained throughout this lawsuit, that the Plaintiffs are hourly, non-exempt employees, and that the proper method for calculating their overtime is the method set forth in 29 C.F.R. § 778.109 and 29 C.F.R. § 778.110(b) and other authorities that use the actual hours works as the divisor. (Meyerhoff Decl. at ¶ 6.) Accordingly, the court concludes that a bona fide dispute exists between the parties.

### 2. Proposed Settlement is Fair and Reasonable

Having found a bona fide dispute, the court will turn to the second step of the analysis.

First, the court considers whether the settlement bears a reasonable relationship to the value of the claims. *Selk,* 159 F. Supp. 3d at 1174. Under the terms of the settlement, the City will pay $61,000 to settle the overtime claims, and as set forth in the table above, each Plaintiff will receive awards ranging from $500.00 to $7,037.28. The parties reached the $61,000 settlement amount after exchanging significant quantities of payroll and timekeeping data and after agreeing to a method for calculating each award. The amount owed to each Plaintiff was based on the following calculation: (1) the number of FLSA overtime hours each Plaintiff worked from April 9, 2015 to June 15, 2018 (the "time period"), was determined based on the total number of statutory, overtime hours (171 hours); (2) the $61,000 was divided by the total number of hours worked by all Plaintiffs during the time period to determine a pro-rated value for each FLSA overtime hour worked; (3) each individual Plaintiff's number of FLSA overtime hours worked during the time period was multiplied by the pro-rated value to determine the individual settlement payment for each Plaintiff; and (5) any Plaintiff whose individual settlement amount was calculated to be below $500 would receive a minimum payment of $500, maximum settlement amounts of $3,200 were applied to any Plaintiff whose individual settlement was above $3,200. (Doc. No. 59 at 9 ¶ 1.b.) After applying the minimum and maximum caps, the parties agreed that the remaining settlement funds would be divided between the three Plaintiffs who had been subject to the maximum cap. (*Id.*) Notably, under the City's calculation which uses the 171 hours as the overtime threshold for potential FLSA liability, Plaintiffs' would have been entitled to $442.40 for unpaid wages over a three-year period, (or $884.80 if liquidated damages were to be added). (Meyerhoff Decl. at ¶ 8.) Based on the calculations and on the City's estimate, and the certainty of recovery, the court concludes this factor weighs in favor of FLSA settlement approval.

Second, the court considers the stage of proceedings and the amount of discovery conducted to ensure that the parties have an adequate appreciation of the merits of the case before reaching a settlement. *Selk,* 159 F. Supp. 3d at 1177. Here, the parties have litigated this case for a year, have formally been engaged in discovery since July 2018, and have obtained the payroll and employment records of the City which were used to calculate the overtime damages awards to each Plaintiff. Thus, the court is comfortable concluding that the parties have "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Accordingly, this factor weighs in favor of approval of the settlement.

Third, in evaluating the serious risks of ongoing litigation, the court is mindful that settlement is favored where "there is a significant risk that litigation might result in a lessor recovery[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). The parties dispute key issues in this litigation, including the damages calculation, and if the litigation were to continue and the City prevailed on its argument regarding how FLSA overtime should be counted and calculated, Plaintiffs' recovery would be significantly diminished. Accordingly, this factor weighs in favor of approval of the settlement.

Fourth, the court considers the opinions of counsel and opinions of participating plaintiffs. "The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.,* No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014). Plaintiffs' counsel, Mr. Conger, has over 25 years of experience litigating wage and hour and employment claims. (Conger Decl. at ¶ 2.) Similarly, the City is represented by experienced counsel in Mr. Meyerhoff. (Meyerhoff Decl. at ¶ 2.) Mr. Conger declares that based on his experience, the terms "are fair, just, and reasonable, and the settlement amount reflects the maximum amount that Plaintiffs could expect to recover if this matter were to proceed to trial." (Conger Decl. at ¶ 11.) Additionally, Mr. Conger attests that his analysis "entails a comparison of the amount of settlement with the amount of damages

Plaintiffs would likely recover if successful on each disputed issue." (*Id.* at ¶ 11.) Furthermore, all of the opt-in members have signed Individual Settlement Agreement and Releases. (Doc. No 56 at 19-51.) The release includes an acknowledgement that the undersigned agreed "to the terms and conditions contained in this Settlement Agreement and Release, as set forth in the above nine (9) pages." *See, e.g.,* Doc. No. 56 at 19. The court presumes that in accordance with the release signed by each Plaintiff, they did in fact receive a copy of the settlement agreement, had time to review it, and then executed the release and no Plaintiff has objected to the settlement terms. Accordingly, this factor weighs in favor of approval of the settlement.

Fifth, the court must consider the scope of the settlement agreement's release provision to ensure that it "does not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *4. Here, the court has reviewed the Release of All Claims clause of the settlement and notes that it specifically contains the proviso that it "does not include claims relating to conduct or activity which does not arise from nor is not attributable to PLAINTIFFS' FLSA claims or to any conduct or activity which occurs after the Effective Date of the AGREEMENT." Doc. No. 56 at 12 ¶ 7. Accordingly, this factor weighs in favor of approval of the settlement.

Finally, the court must consider if the settlement resulted from, or was influenced by, fraud or collusion. A review of the settlement terms and reward being sought by Plaintiffs' counsel does not provide any indication of collusion. Here, each individual opt-in member will receive an amount based on the reasonable formula agreed on by the parties which was based on an analysis of employee time records. The result being that Plaintiffs Murphy and Pittsley each receive an award in the mid-range of all those awarded to the 33 members and neither is seeking incentive awards on their own behalves. Additionally, not only were the damages awarded to each Plaintiff based on a formula, there is nothing in the record to suggest that plaintiffs' counsel "ha[s] allowed pursuit of [his] own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011) (explaining that courts

should be vigilant for explicit collusion along with "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."). Moreover, as the parties point out, "approval by all of the Plaintiffs further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations." (Doc. No. 54 at 15.) Accordingly, finding the settlement to be the result of arms-length negotiations, with no evidence of fraud or collusion, this factor weighs in favor of approval.

In accordance with the above, the court concludes that the settlement agreement is a fair and reasonable resolution of a bona fide dispute regarding FLSA liability. *See Lynn's Food Stores,* 679 F.2d at 1355.

### 3. Attorney's Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk,* 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Even if the parties have already agreed to the amount, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth,* 654 F.3d at 946.

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the fund or the lodestar method" to determine a reasonable attorney's fee." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1042, 1047 (9th Cir. 2002).; *see also In re Bluetooth,* 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."). When employing their discretion and utilizing the percentage-of-recovery method, federal "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *In re Bluetooth,* 654 F.3d at 942. In assessing the reasonableness of the award in common fund percentage award cases, the Ninth Circuit has provided a non-exhaustive list of factors to be used, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g. cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015). Ultimately, "[s]election of the benchmark or any other rate must be supported by findings that take into account all the circumstances of the case." *Vizcaino* 290 F.3d at 1047.

Here, the settlement agreement provides for an attorney's fee and costs award of $30,000 equaling 32.96% of the fund, or $35,000 in the event that Mr. Conger expends more that 20 billable hours working on this litigation after April 11, 2019. (Doc. No. 56 at 9 ¶ 1.a.) Plaintiffs' counsel seeks the higher amount, which represents approximately 36.46% of the total settlement amount. (Doc. No. 56 at 5.)

Mr. Conger attests that he:

> personally reviewed the itemization of work performed in this case. From April 2018 to the present, I expended more than 92 hours on this case. My hourly rate is $650. My lodestar exceeds $60,000. Plaintiffs' costs for litigation exceed $3,400.

Doc. No. 56 at 5 ¶¶ 14, 15, 16. A supplemental declaration was provided by Mr. Conger detailing the time expended on this case. (Doc. No. 58.)

The court acknowledges the factors support the fee request. The settlement amount confers benefits upon the plaintiffs, which when viewed considering the risks associated with continuing this litigation and the City's Rule 68 offer, weighs in favor of the fee amount. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (holding that "the most critical factor is the degree of success obtained. Coupled with this is the risk counsel assumed by taking this case on a contingency fee basis. *See Spann v. J.C. Penney Corp.* 211 F. Supp. 3d 1244, 1264 (C.D. Call. 2016) ("Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award.") (internal quotation marks and citation omitted.).

Additionally, the experience of Mr. Conger in litigating actions of this type would appear to support the request. Moreover, the fact that none of the collective members have objected to the settlement with all members reacting positively, also supports the application. Finally, the supplemental declaration provided by Mr. Conger has provided additional support for his request by detailing a number of tasks performed on this case for the last year, including: meeting with the initial clients, communicating with all 34 plaintiffs, drafting pleadings, reviewing initial discovery productions, legal research, attending a settlement conference, preparing and conducting a Rule 30(b)(6) deposition, and performing damages calculations. (Doc. No. 58.)

The lodestar calculation cross-check ensures the reasonableness of the percentage award requested by counsel. *See In re Bluetooth*, 654 F.3d at 944-45 (encouraging courts to "guard against an unreasonable result by cross-checking their calculations against a second method."). The lodestar figure is calculated by multiplying the number of hours the attorney reasonably expended on the litigation by the reasonable hourly rate. *Id.* at 941. And, while the court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method, the calculation is meant to provide a "useful perspective on the reasonableness of a given percentage award." *Vizcaino,* 290 F.3d at 1050.

Here, both the court's and Mr. Conger's lodestar calculation further bolster the fee request. In support of his request, Mr. Conger declares he has expended more than 92 hours on this litigation, and at an hourly rate of $650, this yields attorney's fees in excess of $60,000 according to his lodestar calculation. (Doc. No. 56 at ¶ 14.) Rather than seek such a high award, Mr. Conger sought an amount that was considerably less than the lodestar calculation, which lends further support to reasonableness of the amount requested. *See., e.g., Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-040149 MMM (SHx) 2018 8150856, at *14 (C.D. Cal. July 12, 2008) (the lodestar calculation serves "as a point of comparison by which to assess the reasonableness of a percentage award.").

Moreover, the court finds the $650 rate for an attorney who has been practicing for over 25 years to be appropriate given plaintiffs' counsel's experience litigating wage and hour and employment matters, a number of which alleged FLSA violations. *See PLCM Group v. Drexler,* 22 Cal. 4th 1084, 1095 (2000) (a reasonable hourly rate is the prevailing rate charged by attorneys of similar skill and experience in the relevant community). Courts in wage and hour cases in this district have previously accepted hourly rates between $200 and $800 as reasonable for partners and senior counsel for lodestar purposes. *See Velasquez v. Int'l Marine & Indus. Applicators, LLC,* Case No. 16cv494-MMA (NLS), 2018 WL 828199, at *9 (S.D. Cal. Feb. 9, 2018) (using counsel's hourly rates from $200 to $800 for lodestar cross-check); *Espinosa v. Cal. Coll. of San Diego, Inc.,* Case No. 17cv744-MMA (BLM), 2018 WL 1705955, at *10 (S.D. Cal., Apr. 9, 2018) (using plaintiff's counsel's hourly rate of $650 to perform lodestar cross-check); *Thompson v. Costco Wholesale Corp.*, Case No. 14-CV-02778-CAB-(WVG), 2017 WL 3840342 (S.D. Cal. Sep. 1, 2017) (allowing use of rates of $650 and $850 for senior attorneys when reviewing submitted lodestar calculation). In addition, the purported 92 hours claimed is supported by the supplemental declaration provided by Mr. Conger wherein he sets forth details regarding the work performed and is reasonable in light of the fact that this litigation proceeded for a little over a year before a settlement was reached. (*See generally,* Doc. No. 58.)

Thus, although the requested fee award is 10% above the Ninth Circuit's benchmark, the court approves the award of $35,000 in attorney's fees and costs.

## IV. CONCLUSION

In accordance with the above, it is hereby ORDERED as follows:

1. The court **GRANTS** approval of the Settlement Agreement;
2. The court **GRANTS** the motion for attorney's fees and awards Michael A. Conger $35,000 in attorney's fees and costs;
3. The Court expressly retains jurisdiction over this action for purposes of enforcing the parties' Settlement Agreement and Release;

4. The case is hereby **DISMISSED WITH PREJUDICE**; and

5. Judgment is hereby entered on the terms set forth above. The Clerk of the Court shall CLOSE this case.

IT IS SO ORDERED.

Dated: August 19, 2019

_____
Hon. Jeffrey T. Miller
United States District Judge